```
                                                    FILED

                                                  10 APR 15 PM 3: 45

                                                  CLERK, U.S. DISTRICT COURT
                                                  SOUTHERN DISTRICT OF CALIFORNIA

                                                  BY: MTB           DEPUTY
```

1  MILBERG LLP
   JEFF S. WESTERMAN (SBN 94559)
2  jwesterman@milberg.com
   SABRINA S. KIM (SBN 186242)
3  skim@milberg.com
   One California Plaza
4  300 S. Grand Avenue, Suite 3900
   Los Angeles, CA 90071
5  Telephone: (213) 617-1200
   Facsimile: (213) 617-1975
6
   MILBERG LLP
7  PETER SAFIRSTEIN
   psafirstein@milberg.com
8  ANDREI RADO
   arado@milberg.com
9  One Pennsylvania Plaza, 49th Floor
   New York, NY 10119
10 Telephone: (212) 594-5300
   Facsimile: (212) 868-1229
11
   *Counsel for Plaintiff Prime Equity Holdings, Inc.*
12
   [Additional Counsel on Signature Page]
13
14              UNITED STATES DISTRICT COURT

15              SOUTHERN DISTRICT OF CALIFORNIA

16                         SAN DIEGO

| | |
|---|---|
| PRIME EQUITY HOLDINGS, INC., individually and on behalf of all others similarly situated, | Case No. '10CV 0798 BTM WVG |
| Plaintiff, | **CLASS ACTION** |
| v. | COMPLAINT FOR: |
| YELLOWPAGES.COM, LLC and AT&T Inc., | (1) Breach of Contract; <br> (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; <br> (3) Violation of California Business and Professions Code § 17500 *et seq.*; and <br> (4) Violation of California Business and Professions Code § 17200 *et seq.* |
| Defendants. | **DEMAND FOR JURY TRIAL** |

| CLASS ACTION COMPLAINT | CASE NO.: |
|---|---|
| DOCS\511685v3 | |

1   Plaintiff Prime Equity Holdings, Inc. ("Plaintiff"), individually and on behalf of all others similarly situated, by its undersigned counsel, alleges the following upon personal knowledge as to its own acts and, as to all other allegations, upon information and belief and investigation by counsel, which included review of publicly available documents and interviews with confidential witnesses.

**NATURE OF THE ACTION**

1. Plaintiff brings this class action on behalf of itself and a class of persons ("Class Members") who purchased a set of services known as the "YP Clicks! program" from Defendant AT&T Inc. ("AT&T") or its wholly-owned subsidiary, Yellowpages.com, LLC, ("Yellowpages.com") (collectively, "Defendants") from January 26, 2006 through the final disposition of this and any and all related cases (the "Class Period").

2. This case alleges that Defendants misrepresented to small businesses the benefits and features of their YP Clicks advertising service and that Defendants were unable to perform under the terms of the YP Clicks agreements.

3. As consumers' use of internet search engines such as Google and Yahoo to seek products and services increased in recent years, the ability to advertise on such search engines, and to receive top placement in searches, has become critically important for businesses. Search engines aid advertising in two ways. First, advertisers can pay to make it more likely that their business or product is highlighted when certain keywords are entered into the search engine. For example, when a user types "pizza" into Google, an ad and link for "Pizza Hut" or "Dominos" might be displayed at the top of the page. This ad will be set off from the unpaid search results, usually through shading. The business would pay for that key term. Second, advertisers can control the content on their websites so that their website is featured at the top of the unpaid search result.

4. Advertisers pay a fee to the search engine company – Google, in the example above – each time their ad is clicked on by internet user. Such ads are known as "pay-per-click" ads. Advertisers – and particularly smaller businesses – have a strong incentive to display their

CLASS ACTION COMPLAINT       - 1 -       CASE NO.:
DOCS\511685v3

advertisements *only* to the people most likely to make a purchase after clicking on the ad. To accomplish this, an advertiser must carefully buy keywords, geographic location terms, and any other available features, to determine to whom their ads should be displayed. This is known in the internet advertising industry as "targeting."

5.  In addition to targeted pay-per-click advertising, website operators also carefully choose text to implant in their website to make it appear as relevant as possible to search engines. This is designed to maximize the likelihood that the website appears at the top of the list of results that are returned when certain search terms are entered. The art and science of maximizing search engine results is generally known as search engine optimization (SEO), and the combination of pay-per-click advertising and SEO will be referred to as search engine marketing (SEM). YP Clicks! is a SEM service Defendants offer to small businesses.

6.  As alleged in detail below, Defendants marketed YP Clicks! to businesses by representing that YP Clicks! could target local consumers that were actively searching for products offered by those businesses. Defendants claimed that YP Clicks! provided a "one stop" solution for businesses wishing to advertise on the internet. Defendants claimed they had entered into partnerships with search engines such as Google, and that by enrolling in the YP Clicks! program, ads would be displayed on those search engines when targeted, useful search terms relating to the business were entered.

7.  Specifically, Defendants represented that YP Clicks! customers would receive: (1) locally targeted, qualified traffic to their websites; (2) a guaranteed number of total clicks by the contract end-date; and (3) targeted key phrases for the customer's title and description text to match website content to maximize the likelihood that customer websites will display at the top of the results page when certain terms are input into a search engine.

8.  Defendants' representations were materially false and misleading for several reasons. First, instead of purchasing "targeted" keywords to drive traffic to customers' sites, Defendants, through a third party, purchased generic terms (such as "pizza" in the example above) and charged a premium price for them. Second, because the advertising was not targeted,

| CLASS ACTION COMPLAINT | - 2 - | CASE NO.: |
|---|---|---|
| DOCS\511685v3 | | |

the above practice created a high number of artificial, useless "clicks" that Defendants still counted towards the "guaranteed" amount of clicks purchased by customers. In some instances Defendants' own employees, or those of the third parties with whom Defendants contract for the keywords, clicked on the links, further artificially inflating the number of clicks. When even those measures fail to garner the guaranteed number of clicks, Defendants then offer to extend their customers' ad campaigns until the "guaranteed" number of clicks is reached – but still require that Class Members pay the monthly fee during this contract time period when clicks are not being realized. Third, Defendants' text additions to customers' websites do not result in those websites appearing at the top of the results list when the agreed-upon search terms are entered. Finally, while selling the YP Clicks! program, Defendants were fully aware that they could not deliver the SEM services promised to and contracted for by the Class Members.

9.  In short, YP Clicks! does not perform as advertised. The only effective advertising connected to the YP Clicks! program was the deceptive campaign about YP Clicks! itself, which resulted in the sale of a useless service, damaging Plaintiff and Class Members.

## JURISDICTION AND VENUE

10.  This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d), because there are at least 100 Class Members in the proposed Class, the combined claims of proposed Class Members exceed $5,000,000 exclusive of interest and costs, and at least one Class Member is a citizen of a state other than Defendants' state of citizenship.

11.  Venue is proper pursuant to 28 U.S.C. § 1391(a) because a substantial part of the events giving rise to the claims asserted herein occurred in this district, and Plaintiff dealt with Defendants who are located in and/or do business in this district. Venue is proper pursuant to 28 U.S.C. § 1391(c) because Defendants conduct substantial business in this District, have sufficient minimum contacts with this District, and otherwise purposely avail themselves of the markets in this District, through the promotion, sale, and marketing of their services in this District.

## THE PARTIES

12. Plaintiff Prime Equity Holdings, Inc. ("Prime Equity") is a mortgage corporation located in Boise, Idaho and is a member of the Class defined below. Prime Equity is owned and operated by Shanna Wroten-Tucker and Dean Tucker. During the Class Period, Prime Equity purchased Defendants' YP Clicks! program with a guaranteed 1,080 clicks for a one-year term (or about 90 clicks per a month) at a monthly rate of $381. After paying this sum for three months, Plaintiff realized that it was receiving significantly less than 90 clicks each month and contacted Defendants. Defendants stated that if the "guaranteed" number of clicks was not reached by the contract's expiration, they would extend the contract terms, but Plaintiff would still need to pay the monthly fee during the contract term while the clicks were not being realized. Plaintiff suffered injury in fact in a manner similar to other Class Members as a result of Defendants' unfair, deceptive, and misleading practices described herein.

13. Defendant Yellowpages.com, a wholly-owned subsidiary of AT&T, is headquartered in Glendale, California. Yellowpages.com is a self-proclaimed "leading Internet Yellow Pages and search directory," and sells, markets, and operates the YP Clicks! program.

14. AT&T is a communications holding company incorporated in Delaware and headquartered in Dallas, Texas. It is the sole owner of Yellowpages.com since 2006 and, before 2006, its predecessors-in-interest were joint owners of Yellowpages.com. AT&T, through its own employees and those of Yellowpages.com, sells, markets, and operates the YP Clicks! program.

15. AT&T is the parent company of Yellowpages.com and controls Yellowpages.com. Each Defendant acted pursuant to and within the scope of the parent-subsidiary relationship, and each Defendant knew or should have known about, and authorized, ratified, adopted, approved, controlled, aided and/or abetted the alleged conduct.

CLASS ACTION COMPLAINT — - 4 - — CASE NO.:
DOCS\511685v3

## DEFENDANTS' UNLAWFUL BUSINESS PRACTICES

**Defendants' False and Misleading Statements**

16. The YP Clicks! program was launched on April 28, 2005, by AT&T's predecessors-in-interest, who issued a press release that same day emphasizing the purported benefits of the YP Clicks! program:

> YELLOWPAGES.COM LLC, a joint venture of SBC Communications Inc. and BellSouth Corp., has contracted with TrafficLeader, a subsidiary of Marchex, to launch an advertising package designed to simplify search engine marketing for local advertisers.
>
> The new search engine product eliminates the need for businesses to learn and navigate multiple search engines, search methods and submission standards to advertise strategically on the Internet. It also reduces risk by enabling advertisers to purchase a specified number of clicks for a flat fee.
>
> This full-service package is being sold by SBC Yellow Pages as a SMARTpages.com bundle (SBC Search Engine Solutions) and by YELLOWPAGES.COM (YPclicks!). The search engine product offering is modeled after BellSouth's successful Real Search Engine Solutions product also powered by TrafficLeader Express.
>
> "Research shows that *up to 30 percent of consumer searches online are for local information*," said Myles Midgley, executive director-Internet Yellow Pages operations for SBC Directory Operations. "*We're experts in connecting local buyers with sellers*, and we're continually evolving our product offering to make sure we have the most complete solution available. Our new advertising package does just that. *When businesses combine Search Engine Solutions with their current SMARTpages.com advertising, they can reach more customers who make purchasing decisions - no matter where they are searching online.*"
>
> "Search Engine Solutions and YPclicks! are wonderful examples of how the partnership between SBC and BellSouth is enabling us to build a premier Internet Yellow Pages presence and offering for local businesses," said Charles Stubbs, CEO & president of YELLOWPAGES.COM LLC. "By introducing a common product across three companies, we are able to offer local businesses the direct benefit of this partnership and future value that we will be providing all advertisers as we move towards a single site and single platform."
>
> "TrafficLeader Express provides BellSouth RealPages.com, and now SBC SMARTpages.com and YELLOWPAGES.COM with the ability to offer local advertisers a unique combination of search engine services that can effectively complement existing marketing programs," said John Keister, Marchex president and COO. "The platform makes it easy for advertisers to leverage the benefits of search engine marketing across a wide base of distribution."
>
> *Once an advertiser signs up, keywords and phrases are submitted to a network of search engines to index the advertiser with a description of its business specialty. At this point the search distribution for the advertiser can be selected - based on criteria that may include business name, category and geography.*

| CLASS ACTION COMPLAINT | - 5 - | CASE NO.: |
|---|---|---|

DOCS\511685v3

Advertisers have a wide selection of options through a network of many of the Internet's most popular search engines. SBC SMARTpages.com offers five advertising packages and YELLOWPAGES.COM offers four packages. The packages are based on the desired volume of clicks. The advertiser indicates the number of clicks it wants to receive. If the "guaranteed" clicks are not received during the regular contract term, the advertiser's contract is extended.

"With our search engine product, we've removed the risk and complexity for the advertiser. *The fee is flat and the advertiser is assured of the exposure to consumers,*" said Midgley. "This offering is a perfect complement to traditional Yellow Pages advertising and demonstrates how both print and online Yellow Pages are a perfect link between buyer and seller."

(Emphasis added).

17.  Defendants' advertisements for YP Clicks! during the Class Period further boasted the program's purported benefits. For example, one advertisement that appeared on Yellowpages.com during the Class Period stated, in its entirety:

> YP.COM has developed a **One-Stop-Shop** for all your search engine solutions. Let us do the work for you, and see how easy it is to **drive traffic to your website**.
>
> One-Stop-Shop for Search Engine Solutions
> ▶ Locally targeted, qualified traffic to your website
> ▶ Guaranteed number of total click-through's by contract end-date
> ▶ Text ad submission to our core network of search engines for the life of your contract
> ▶ Monthly e-mail reports and one fixed rate on your bill
> ▶ Targeted key phrases for your title and description text to match your website content and meet search engine guidelines
>
> YPclicks! Search Engine Solutions
>
> All YPclicks! search engine solutions include a guaranteed number of clicks and submission to the Search Engine Network, as specified below:[1]
>
> **Options:**
> ▶ 360; 720; 1,080; 2,040; 3,300; 4,800; and 6,000 Clicks Packages - Enhance, Google and/or Yahoo![2]

---

Search Packages will start within 45 days of sales order. Search Orders may be rejected if Advertiser's website is incomplete, under construction or contains pop-ups, disabled browser back button, excessive Flash, predominately foreign language, or questionable content.

[1] Click-through's are guaranteed to be delivered by the contract end date as solely determined by YP.COM. In order to ensure delivery of contracted results, additional search engines may be used as needed. There is never a guarantee of rank, or position within search results. The Search Engine Network is subject to change at any time. Please check with your Sales Representative.

| CLASS ACTION COMPLAINT | - 6 - | CASE NO.: |
|---|---|---|

DOCS\511685v3

[2] Networks vary by package size.

(All emphasis in original).

18. Defendants' sales force has been trained uniformly to adhere strictly to presentations making the above representations in soliciting business. Whether in person or over the phone, Defendants' salespeople were, as a condition of their employment, required to represent to potential customers that YP Clicks! will result in an increase of "locally targeted, qualified traffic" to the customer's website, and that YP Clicks! can put businesses in a "dominant position" in results on its "extended distribution partner" search engines.[1] This information is provided in a script that each of Defendants' sales staff is required to follow in order to work for Defendants.

19. YP Clicks! charged a premium for these services, because it was purportedly (1) providing customers with "premium" – *i.e.*, highly targeted – keywords, (2) putting customers' websites at the "top" of search engine results, and (3) "guaranteeing" a certain number of meaningful clicks.

**Defendants' False and Misleading Statements Are Corroborated by Confidential Witnesses**

20. Defendants' representations were and are false and misleading for three primary reasons. First, instead of purchasing "targeted" keywords to drive traffic to customers' sites, Defendants, through a third party, purchased generic terms (such as "pizza" in the example above) and charged a premium price for them. Second, because the advertising was not targeted, Defendants' practice created a high number of artificial, useless "clicks" that Defendants still counted towards the "guaranteed" amount of clicks purchased by customers. In some instances Defendants' own employees, or those of the third parties with whom Defendants contract for the keywords, clicked on the links, further artificially inflating the number of clicks. When even those measures failed to garner the guaranteed number of clicks, Defendants offered to extend their customers' ad campaigns until the "guaranteed" number of clicks was reached – but still

---

[1] "Extended distribution partners" refers to popular search engines such as Yahoo!, Alta Vista, and Google, among others.

required Class Members pay the monthly fee during this contract time period while clicks are not being realized. Third, Defendants' text additions to customers' websites did not result in those websites appearing at the top of the results list when the agreed-upon search terms are entered. Finally, while selling the YP Clicks! program, Defendants were fully aware that they could not deliver the SEM services promised to and contracted for by the Class Members.

21.     Defendants' unfair, deceptive and unlawful sales practices are exacerbated by the very "contract" by which they claim to bind their customers. That contract is confusing, not in conformance with the representations made by Defendants' salespeople, and uniformly withheld from Defendants' customers until *after* they have "agreed" to the materially different terms negotiated by Defendants' salespeople.

22.     These allegations are confirmed by confidential witnesses contacted by Plaintiff's counsel. Confidential Witness 1 ("CW1") was a sales account manager for Defendant AT&T from January to December of 2009. CW1 sold the YP Clicks! program, but resigned because CW1 perceived, based on his experiences with the program, that the program hurt small businesses. CW1 believed, based on CW1's first hand experience and evidence CW1 had seen, that the YP Clicks! program did not deliver as advertised. For instance, CW1 stated that YP Clicks!' keywords – that is, the words that cause a business's ad to appear on a website – are purchased in bulk by a third party, Marchex, which does not, in its turn, buy "targeted" or "premium" keywords from the search engine company. Rather, Marchex buys only generic keywords that result in a business's ads being displayed to – and therefore clicked on by – a largely irrelevant portion of consumers. For example, Defendants may purchase the right to display ads on Google or Yahoo! every time a user searches for the word "car" or "pizza." Then, despite Defendants' representations that ads would be displayed only when more targeted and specific words are used, customers' ads are instead displayed when these generic terms are searched, artificially inflating the number of clicks reported to customers and resulting in precisely the useless contacts YP Clicks! was supposed to avoid. CW1 stated that some of the clicks on customers' website in fact came from AT&T or Marchex employees themselves.

| CLASS ACTION COMPLAINT | - 8 - | CASE NO.: |

DOCS\511685v3

23. Worse, when salespeople, including CW1, complained to AT&T's management about customer complaints about the uselessness of the YP Clicks! product, they were told to simply avoid customers who were complaining to them, and to focus their efforts on selling to other customers. CW1 stated that s/he saw emails from AT&T's corporate management explaining the best way to avoid or stonewall dissatisfied customers.

24. CW2 was an Advertising Sales Manager for AT&T from June 2008 to September 2009. CW2 stated that s/he would reach agreements with customers on the keywords that should be purchased on their behalf but, when CW2 investigated further, s/he concluded that despite the terms CW2 agreed to purchase for the customer, Defendants bought more generic terms, while still charging the higher prices typically associated with more targeted advertising. CW2 explained that this was not useful for customers. As CW2 learned more information about what was occurring, CW2 concluded that YP Clicks! did not work as advertised, and that s/he had been trained and instructed by Defendants to mislead potential customers. CW2 consequently resigned.

25. CW3 was an Internet Advertising Account Executive for Defendant AT&T from mid-2006 to November of 2008. CW3 stated that, based on the technology used by the YP Clicks! program (as opposed to other, similar programs with which CW3 was familiar), CW3 found it unlikely that AT&T could provide reliable data regarding clicks to YP Clicks! customers. CW3 further stated that s/he did not believe that the YP Clicks! program could deliver what Defendants promised.

## CLASS ALLEGATIONS

26. Plaintiff brings this action on its own behalf and as a Class Action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks certification of the following Class:

> All persons in the United States who purchased the YP Clicks! program service from January 26, 2006 through the final disposition of this and any and all related actions.

27. Plaintiff and the members of the Class are so numerous that joinder of all members individually, in one action or otherwise, is impractical.

28. This action involves questions of law and fact common to Plaintiff and all members of the Class which include:

    (a) Whether Defendants breached their contracts with Plaintiff and the Class Members;

    (b) Whether Defendants breached the implied covenant of good faith and fair dealing;

    (c) Whether Defendants violated California Business and Professions Code Section 17500;

    (d) Whether Defendants violated California Business and Professions Code Section 17200; and

    (e) Whether Plaintiff and Class Members sustained damages resulting from Defendants' conduct and, if so, the proper measure of damages, restitution, equitable or other relief, and the amount and nature of such relief.

29. Plaintiff understands and is willing to undertake the responsibilities of acting in a representative capacity on behalf of the proposed Class. Plaintiff will fairly and adequately protect the interests of the Class and has no interests adverse to or which directly conflict with the interests of the other members of the Class.

30. Plaintiff has engaged the services of counsel, who are experienced in complex class litigation, who will adequately prosecute this action, and will assert and protect the rights of and otherwise represent Plaintiff and the absent Class Members.

31. Plaintiff's claims are typical of those of the absent Class Members because Plaintiff and the Class Members each sustained damages arising from Defendants' wrongful conduct, as alleged more fully herein.

32. This action is brought under Rule 23 because Defendants have acted on grounds generally applicable to all members of the Class.

33. Judicial determination of the common legal and factual issues essential to this case would be far more efficient and economical as a class action than piecemeal individual determinations.

34. Plaintiff knows of no difficulty that will be encountered in the management of this litigation which would preclude its maintenance as a class action.

## COUNT I
## Breach of Contract

35. Plaintiff incorporates the above allegations by reference as though fully set forth herein.

36. Plaintiff and Class Members entered into contracts with Defendants for services under Defendants' YP Clicks! program.

37. Plaintiff and the Class Members performed their part of those agreements by paying for the YP Clicks! program, or are excused from performance because of Defendants' non-performance as alleged herein.

38. Defendants did not perform in accordance with the terms of any contract that exists between them and Plaintiff and the Class Members, by among other things:

    (a)    failing to deliver the agreed-upon number of "guaranteed" clicks;

    (b)    purchasing generic and virtually useless keywords instead of the more targeted keywords that Plaintiffs and the Class bargained for; and

    (c)    failing to ensure that Plaintiffs and Class Members' websites appear at the top of search engine results as agreed upon.

39. As a direct and proximate result of Defendants' breach of these material terms, Plaintiff and the Class Members did not receive the benefit of their bargain and were damaged, in an amount to be determined at trial.

## COUNT II
## Breach of the Implied Covenant of Good Faith and Fair Dealing

40. Plaintiff incorporates the above allegations by reference as though fully set forth herein.

41. Every contract imposes upon each party a duty of good faith and fair dealing in its performance. The YP Clicks! agreements between Plaintiff and Defendants contained an implied covenant of good faith and fair dealing. The covenant requires that neither party to the contract do anything to infringe upon the other party's rights to the benefits of the agreement, or to deprive the other party of the benefits of the contract.

42. Defendants' breached the implied covenants of good faith and fair dealing contained in each of the YP Clicks! agreements by, among other things:

    (a)    failing to make good faith efforts to deliver the agreed-upon number of "guaranteed" clicks;

    (b)    purchasing generic and virtually useless keywords instead of the more targeted keywords that would enable Plaintiffs and the Class Members to reap the agreed-upon benefits of the YP Clicks! agreements; and

    (c)    failing to make good faith efforts to ensure that Plaintiffs and Class Members' websites appear at the top of search engine results as agreed upon.

43. As a direct result of Defendant's breaches of the implied covenant of good faith and fair dealing, Plaintiff and the Class were damaged, in an amount to be determined at trial.

### COUNT III
### Violation of California Business and Professions Code § 17500 *et seq.*

44. Plaintiff incorporates the above allegations by reference as though fully set forth herein.

45. Throughout the Class Period, Defendants engaged in a public advertising and marketing campaign and offered for sale the YP Clicks! program on a nationwide basis, including in California.

46. Defendants engaged in their advertising and marketing with an intent to directly or indirectly induce the purchase of the services constituting the YP Clicks! program. Defendants likewise actively concealed their knowledge that the YP Clicks! program did not deliver the services promised by their advertising and salespeople, including that the keywords

promised were often not delivered, that the number of clicks "guaranteed" during the life of the contracts were not delivered, that many of the clicks on customers' advertisements were from other generic keywords or from Defendants' own employees, and that customers' websites were often not displayed at the top of the relevant search results.

47. Defendants' advertisements and marketing representations are false, misleading, and likely to deceive the public and/or deceived the public by falsely representing the characteristics and/or benefits of the YP Clicks! program, as detailed above.

48. In making and disseminating the statements alleged herein, Defendants knew or should have known that the statements were untrue or misleading, and acted in violation of California Business and Professions Code Section 17500, *et seq.*

49. Plaintiff and Class Members seek restitution, declaratory and injunctive relief, and other relief allowable under Section 17500, *et seq.*

## COUNT IV
### Violation of California Business and Professions Code § 17200 *et seq.*

50. Plaintiff incorporates the above allegations by reference as though fully set forth herein.

51. The circumstances giving rise to Plaintiff's and Class Members' allegations, including the corporate policies regarding the sales, marketing, and implementation of the YP Clicks! program, occurred in the State of California. Additionally, Defendant Yellowpages.com LLC maintains its corporate headquarters in Glendale, California. Accordingly, application of California law is appropriate.

52. By engaging in the acts and practices described above, Defendants committed one or more acts of "unfair competition" within the meaning of Business & Professions Code § 17200. "Unfair competition" is defined to include any "unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by [Business & Professions Code § 17500 *et seq.*]."

53. Defendant committed "unlawful" business act or practices by, among other things, engaging in false advertising in violation of Business & Professions Code § 17500, breaching their contracts with Plaintiff and Class Members, and/or breaching the implied covenant of good faith and fair dealing.

54. Defendants committed "unfair" business act or practices by, among other things:

(a) engaging in conduct where the utility of such conduct, if any, is outweighed by the gravity of the consequences to Plaintiff and Class members;

(b) engaging in conduct that is immoral, unethical, oppressive, unscrupulous, or substantially injurious to Plaintiff and Class Members; and

(c) engaging in conduct that undermines or violates the spirit or intent of the consumer protection laws alleged in this Complaint.

55. Defendants committed "fraudulent" business act or practices by, among other things, engaging in conduct Defendants knew or should have known were likely to and did deceive the public, including Plaintiff and other Class Members.

56. As detailed above, Defendants' unlawful and unfair practices include, but are not limited to, the following:

(a) promoting, marketing, and selling Search Engine Optimization services, without intent to provide them as advertised;

(b) omitting to state to Plaintiff and Class Members that third party Marchex purchased generic keywords rather than premium keywords;

(c) omitting to state to Plaintiff and Class Members that Defendants' Search Engine Optimization features were unable to cause Class Members' pages to be displayed at the top of search engine results;

(d) omitting to state to Plaintiff and Class Members that clicks were only "guaranteed" to be delivered during the duration of the contract if Defendants could extend that contract indefinitely while still billing monthly; and

(e) charging and collecting premiums for these so-called "services."

57. Plaintiff and Class Members suffered injury in fact and lost money and property as a result of Defendants' unlawful and unfair practices. Plaintiff and Class Members would not have enrolled in the YP Clicks! program at the price they did (if at all), and would not have paid for generic keywords at the prices they did (if at all), had they been aware of the falsity and misleading nature of Defendants' representations.

58. Plaintiff and Class Members seek restitution, declaratory and injunctive relief, and other relief allowable under Section 17200, *et seq*.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of itself and all others similarly situated pray for judgment against Defendants as follows:

A. An order certifying this case as a class action and appointing Plaintiff and their counsel to represent the Class Members;

B. Restitution to Plaintiff and Class Members;

C. Actual damages for injuries suffered by Plaintiff and the Class Members;

D. An order enjoining Defendants from the wrongful conduct detailed above;

E. Reasonable attorneys' fees and the costs of this action;

F. Statutory pre-judgment interest; and

G. Such other relief as this Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands trial of their claims by jury to the extent authorized by law.

DATED: April 15, 2010

**MILBERG LLP**
JEFF S. WESTERMAN
SABRINA S. KIM

_____
SABRINA S. KIM

One California Plaza
300 S. Grand Avenue, Suite 3900
Los Angeles, CA 90071
Telephone: (213) 617-1200
Facsimile: (213) 617-1975
Email: jwesterman@milberg.com

**MILBERG LLP**
PETER SAFIRSTEIN
psafirstein@milberg.com
ANDREI RADO
arado@milberg.com
One Pennsylvania Plaza, 49th Floor
New York, NY 10119
Telephone: (212) 594-5300
Facsimile: (212) 868-1229

**SOMMERS SCHWARTZ, P.C.**
JASON J. THOMPSON
LISA RYCUS MIKALONIS
HENRI O. Harmon
2000 Town Ctr., Ste. 900
Southfield, MI 48075-1100
Telephone: (248) 355-0300

**KRESCH OLIVER**
ARI KRESCH
24100 Southfield Road
Southfield, MI 48075
Telephone: (248) 327-6556

# CIVIL COVER SHEET

℘JS 44 (Rev. 12/07)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
PRIME EQUITY HOLDINGS INC., individually and all others similarly situated.

(b) County of Residence of First Listed Plaintiff: Boise, Idaho
(EXCEPT IN U.S. PLAINTIFF CASES)

(c) Attorney's (Firm Name, Address, and Telephone Number)
Jeff S. Westerman, Milberg LLP, 1 California Plaza, 300 S. Grand Avenue, Ste 3900, Los Angeles, CA 90071

## DEFENDANTS
YELLOWPAGES.COM, LLC

10 APR 15 PM 3:42
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

County of Residence of First Listed Defendant:
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

Attorneys (If Known)  '10 CV 0798  BTM WVG

Richard Max Valdez, Sandler Lasry Laube Byer and Valdez
402 West Broadway San Diego, CA 92101-3542

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☐ 2 U.S. Government Defendant
☐ 3 Federal Question (U.S. Government Not a Party)
☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☒ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☒ 110 Insurance | PERSONAL INJURY / PERSONAL INJURY | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane / ☐ 362 Personal Injury - Med. Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 |  | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 365 Personal Injury - Product Liability | ☐ 630 Liquor Laws | PROPERTY RIGHTS | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 320 Assault, Libel & Slander / ☐ 368 Asbestos Personal Injury Product Liability | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' Liability | ☐ 650 Airline Regs. | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 340 Marine / PERSONAL PROPERTY | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 345 Marine Product Liability / ☐ 370 Other Fraud | ☐ 690 Other |  | ☐ 490 Cable/Sat TV |
| ☐ 160 Stockholders' Suits | ☐ 350 Motor Vehicle / ☐ 371 Truth in Lending | LABOR | SOCIAL SECURITY | ☐ 810 Selective Service |
| ☒ 190 Other Contract | ☐ 355 Motor Vehicle Product Liability / ☐ 380 Other Personal Property Damage | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal Injury / ☐ 385 Property Damage Product Liability | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 196 Franchise |  | ☐ 730 Labor/Mgmt.Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| REAL PROPERTY | CIVIL RIGHTS / PRISONER PETITIONS | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 210 Land Condemnation | ☐ 441 Voting / ☐ 510 Motions to Vacate Sentence | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 220 Foreclosure | ☐ 442 Employment / Habeas Corpus: | ☐ 791 Empl. Ret. Inc. Security Act | FEDERAL TAX SUITS | ☐ 893 Environmental Matters |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ Accommodations / ☐ 530 General |  | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare / ☐ 535 Death Penalty |  | ☐ 871 IRS—Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities - Employment / ☐ 540 Mandamus & Other | IMMIGRATION |  | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 290 All Other Real Property | ☐ 446 Amer. w/Disabilities - Other / ☐ 550 Civil Rights | ☐ 462 Naturalization Application |  | ☐ 950 Constitutionality of State Statutes |
|  | ☐ 440 Other Civil Rights / ☐ 555 Prison Condition | ☐ 463 Habeas Corpus - Alien Detainee |  |  |
|  |  | ☐ 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

☒ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Remanded from Appellate Court
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. §1332(d) (Class Action Fairness Act)
Brief description of cause: Complaint for Violation of the California Business and Professions Code

## VII. REQUESTED IN COMPLAINT:
☒ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions):
JUDGE John A. Houston
DOCKET NUMBER 10-CV-0195 JAH

DATE: 04/15/2010
SIGNATURE OF ATTORNEY OF RECORD: Jeff S. Westerman  /s/ Jeff S. Westerman/AJB

**FOR OFFICE USE ONLY**
RECEIPT # 1233  AMOUNT $350  APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____
TD 04-15-10



```
Court Name: USDC California Southern
Division: 3
Receipt Number: CAS012331
Cashier ID: mbain
Transaction Date: 04/15/2010
Payer Name: SAN DIEGO LEGAL SUPPORT SVCS
----------------------------------
CIVIL FILING FEE
 For: PRIME EQUITY V YELLOWPAGES.COM
  Case/Party: D-CAS-3-10-CV-000798-001
  Amount:         $350.00
----------------------------------
CHECK
 Check/Money Order Num: 88578
 Amt Tendered:  $350.00
----------------------------------
Total Due:      $350.00
Total Tendered: $350.00
Change Amt:     $0.00


There will be a fee of $45.00
charged for any returned check.
```